24-1808 Eastern Missouri, Lillian Vogt v. Progressive Casualty Insurance Company. Mr. Taylor. Thank you, and may it please the Court, Jonathan Taylor for the Plaintiff Appellant Lillian Vogt. I'm going to try to reserve three minutes for rebuttal if I can. This case challenges the legality of a uniform titling policy adopted by progressive insurance in the State of Missouri. But the question at this stage is not about the merits of the case. Rather, it is about whether the case may proceed as a class action. And what I'd like to do this morning is focus on three features of the case that make it especially well-suited for class-wide treatment under this Court's precedence. I'm going to signpost them, and then if I may walk through each point in a little bit more detail. Speak up a little. I'm happy to. Raise the mic, and you can raise the platform, too. There's a button on the side.  I'll make do. Thank you. Number one, the liability. Did you find a button? The button is here, but I think it's all the way up here. Yes, it is. Number one, the liability theory is common and is based on a recent Missouri Court of Appeals decision involving the exact same policy and the exact same defendant. And that's pretty unusual. Number two, the claims all challenge Progressive's uniform failure to do something required by law, obtain a salvage title before selling a salvage vehicle. And Progressive has identified no evidence that this fact was somehow disclosed to any class member before they bought their vehicle. And number three, damages will be calculated using a simple mathematical formula, using information contained in Progressive's own files. And it's really those three things that together make this a uniquely well-suited case for class certification. And if I may, I'd like to walk through each point in a little bit more detail and then pivot if there's time. None of those arguments get to the 23B problem. None of those arguments get to the reasons why the class was not certified. Well, I'm happy to start with those, Your Honor. So I think you're here to overturn a district court ruling, right? That's right. So don't tell us all the good things that you argued that the court did not reject. Well, so the district courts, and this is what we say in our briefing, and I think the district court made two errors in refusing to certify a class here. And the first error is really the most fundamental because the second error follows from the first error. And the first error is a failure to properly understand our legal theory. And the legal theory here, it really dovetails with the point I was just about to get to, does not depend on any individual representations that were made. What's your best case for that being reversible error? I think that the trial court didn't understand our theory. I mean, you can argue your theory, and if that's just not the way you – if it's not reversible error, the trial court didn't understand our theory. Well, then you could have gone in and made a motion to correct it. Well, we – it was already in the briefing. If you look at pages 34 and 35 of the supplemental appendix, we were crystal clear on exactly what our theory was. And the district court thought that what mattered – I found the theory quite confusing in the briefs, frankly. Well, I'm happy to try to explain it a little more clearly now. No, I mean, I think I understand it as you articulate it. Yeah. But the reversible error is in the trial court didn't understand what we were saying. No, we – That's just not – that's not a – that's not an argument. Well, if the trial court has – the trial court is under an obligation to apply the requirements of Rule 23. And if a plaintiff has a case that satisfies all the requirements of Rule 23, then the length – the plain text of the rule, and the Supreme Court said this in Shady Grove, is that the case must be certified. And if the district court is laboring under a misunderstanding of what the plaintiff is – I don't think there's a must be anywhere in Rule 23, other than maybe in 23B. Well, I'm happy to read the language from the Supreme Court's opinion. No, I mean, this is just – we aren't talking about the issues yet. And here we are, how many minutes into your argument? Well, if I'll just – just in direct answer to your question, Your Honor. I didn't ask a question. I made a comment. If you look at page 13 of our brief, you'll see it. So I think why this matters is what we're relying on here for the theory of liability is the exact same theory of liability that the Missouri Court of Appeals in Park, a case, again, involving the exact same theory, the exact same policy, and the exact same defendant, endorsed. And it relied on – the court there relied on three facts, the fact that Progressive had designated the vehicle internally as a salvage vehicle, had declared it internally in its claim file as total loss, and then yet, number three, had obtained a clean title. And that's the Park case, correct? That's the Park case, right. But that's not a class action. So that still talked about having to get into particular files to determine what had happened in that case. It was a single plaintiff. It was a single – but the reason why it matters is because the Supreme Court said in Tyson Foods, in order to determine whether a case is properly certified as a class action, you have to figure out what a plaintiff can prove in an individual case and then ask the question whether this can be replicated in a class-wide manner and is suitable for class-wide treatment. And there's that second part that is at issue here. Exactly. But in order – although this Court cannot, in applying the requirements of Rule 23, get too deeply into the merits, it is important to understand what the theories are in the merits to then know whether a class certification is appropriate. And if we were coming to you – You set up a simple case theory, and the trial court said it's not simple. Well, what we're – again, what we're relying on here are the exact same three facts that the plaintiff in Park was relying on, and the defendants – Park is not controlling, and it's not a class action. I'm happy to get to the class action question, but Park is controlling on the substantive question of Missouri law. No, it's not. It's an intermediate appellate court. It's an appellate decision by the State court that deals with the exact same policy and the exact same defendant. And I think that's a pretty good indication of how the Missouri Supreme Court would – It goes back for as many decades as I've been on the Court. And if you don't – if you don't understand that, don't make your eerie argument as though it doesn't exist. I understand that this Court is making an eerie prediction about what the Missouri Supreme Court is likely to do. And what I'm saying that makes this case unique is that, although we don't have a Missouri Supreme Court that's directly on point, we have a Missouri Court of Appeals decision where transfer was denied. That is a pretty strong indication of how the Missouri Supreme Court is likely to – It has a persuasive force. And in any event – It is not eerie control. Well, in any event, those are the same three facts that we're relying on, and that's a common question. And so that gets to the procedural question, which is – I think really if you look at this Court's fraudulent misrepresentation cases, my friend is right, and the district court is right, that there are a bucket of cases where this Court has held that if you're alleging an affirmative misrepresentation and the defendant has come forward with evidence that some plaintiffs didn't see or didn't rely on the misrepresentations, then that's not going to be suitable for class-wide treatment. That's the St. Jude case. That's the Huddock case. That's the Johanneson case. But in a case like this one involving fraudulent non-concealment claims where the defendant did not produce any such evidence of knowledge, this Court has held that certification is proper, and that's your decision in the custom hair designs case. And that's – if you want to look at the particular pages, it's 984F3rd at 603 to 604. And other circuits – I'm going to cite a couple of them here – have held exactly the same. The Second Circuit in the U.S. Food Service case, at page 121 of that opinion, and then the Fifth Circuit en banc in Torres did the same thing. And so I think that is really the key second point, is that we have a common theory of injury and causation, and we're challenging a uniform refusal to disclose something that is of obvious importance to anyone buying a vehicle. So then you can just presume the reliance? Is that – and the right to rely? I wouldn't say presume reliance like it's any sort of legal principle in the way that it was in the Halliburton case. What I would say – and this is what the cases say, and you can look at the Food Service case, the Clay case, out of the Eleventh Circuit, C.G.C. out of the Tenth Circuit, Torres en banc Fifth Circuit decision, is that when you have a uniform concealment claim, and what is being concealed from class members is something that is obviously materially important. So in these cases, they involve a fraudulent overbilling scheme. As I predicted before I read it, custom here simply involves the typical fraudulent concealment argument that is made to defeat a statute of limitations defense. So custom here to me is easily distinguishable. I mean, I don't see how you could say that. I think what this Court – Because I've been dealing with fraudulent non-concealment ever since I was an antitrust lawyer for decades. Well, I think what it's being – It's different than the way you're treating – I mean, I've also got fraudulent concealment affirmative fraud cases. But fraudulent concealment to defeat a statute of limitations is not within the universe we're talking about. No, the claim here under Missouri law is properly conceptualized as a fraudulent concealment case or a fraudulent non-disclosure case, if you will. And what makes that different for class certification purposes is in a fraudulent non-disclosure case, you're relying on a uniform failure on the part of the defendant to disclose or make the class aware of something that is material. And when that is a highly material thing, like, for example, the fact that you're operating a pyramid scheme, as was true in Torres, or the fact that you have sham fees, as was true in the custom hair designs case, or as in this case, when the vehicle that you are selling is actually a vehicle that requires a salvage title and cannot be lawfully driven or sold by the person purchasing the vehicle, that it's that kind of circumstantial evidence can be used to establish the fact that the person is relying on the failure to disclose that key fact. And when that circumstantial evidence, and it comes in the form of payment without the disclosure being made, when you have that kind of common proof, then it's incumbent on the defendant to rebut that with some kind of individualized showing, and the defendant hasn't done that here. And so in this case, the architecture is exactly the same as CPAY. Sorry, for calling it the CPAY case, but that was the defendant in the custom hair designs case. And so like this case, custom hair designs involved a common allegation, fraudulent nondisclosure of a highly material fact. Like this case, the defendant in custom hair designs identified no evidence that anyone disclosed the scheme to any class member. And like this case, damages will be calculated using a common methodology from the defendant's own files. And so it's really on all fours procedurally, Your Honor, with this Court's decision, custom hair designs. And you take that and add that to what the Missouri Court of Appeals said about this exact kind of claim and the evidence that will matter and what the defense to liability will be. And you put those two together, and it just, this case cries out for class freedom. And you've got the noncommon problems that the district court focused on. All of the district court, all of the problems that the district court purportedly identified flowed from its misunderstanding of the legal theory. And if you look at pages 8, 9, 10, 13, you'll see that. You can say that, but I don't understand it or I thoroughly disagree with it. Well, because, for example, the district court relied on the fact that the plaintiff here maybe didn't ask for the Carfax report or didn't follow up with questions. But none of that matters if what your complaint, the fact that it was not disclosed to you. It matters to liability. No, it doesn't. Because what matters to liability is the fact that people were sold a car that was actually lawfully required to be registered as a salvage vehicle and that you couldn't lawfully drive or resell to consumers. And that becomes an out-of-pocket invention. That's a good argument if you're the Attorney General seeking some kind of an injunction or a fine. It's not an argument that wins a plaintiff's damage case. Respectfully, Your Honor, I disagree. But I see that my time is dwindling, and I'll try to reserve the remainder of it for rebuttal if I may. Is it Sasse or Sasse? Sasse, Your Honor.  May it please the Court, Ben Sasse for Appellee Progressive Casualty Insurance Company. The district court did not abuse its discretion by finding that individual issues of reliance, right to rely, and causation precluded class certification under Rule 23b-3. That finding aligns with the record, Missouri law, and this Court's decisions in Johanneson, In re St. Jude Medical Center, and Hudak, all of which teach that fraud cases are uniquely unsuitable to class certification. As to the argument we just heard about the theory they were now pressing on appeal, I'd like to say that in fairness to the district court, that was not the argument they made below. If you look at page 11 of their reply brief, that's page 248 of the appendix, that's the only time they mention reliance or right to rely in the class certification briefing. And in that section, all they said was, if you have a total loss vehicle, that means the insurer... Give me the record site again. Sure, Your Honor. That's page 11 of their reply brief. It's page 248 of our appendix, Progressive's appendix. And that was cited by the district court, Your Honor, at page 8 of the district court's opinion. And so in fairness to the district court, it addressed the only argument that was made. And that argument was that if you have a total loss vehicle, that means the insurer has determined it's not a vehicle that can be fixed in a cost-effective manner. And so the fact of the purchase alone means you're relying on the representation that it has a clean title. And so in fairness to the district court, that of course puts damages squarely at issue, because what you're saying is the vehicle is worth less than it was represented. And so the district court fairly and reasonably looked at the testimony of this individual plaintiff as a proxy for the kinds of individual issues that would have to be adjudicated to resolve this dispute and noted that this particular plaintiff knew before she bought the vehicle that it had problems with it because she took a test drive and experienced issues. She signed a buyer's guide that advised her to obtain a vehicle history report along with an inspection, and she didn't either. And she was so unconfident with the vehicle she purchased that she immediately upon purchase took it to a mechanic to look at it, although she didn't take it beforehand. What about the idea, though, that it was represented, it was salvaged under Missouri law and that's how it was presented to this group of people? I'm sorry, it wasn't presented to the buyers of these cars. So in other words, it's been salvaged, but then they got a clean title. That sort of seems like class-wide. That doesn't depend on, you shouldn't, should the consumer have to go and get a Carfax to make sure that they're telling the truth about the title? Well, I mean, I think there's sort of a few things here. First of all, the impact of the title does not go to drivability. It goes to the value of the vehicle. And, you know, if we're going to look at the Park case, and I appreciate the colloquy about it's not controlling, but we need to embrace all of it I guess is the way I would say it, Your Honor, if you're looking at it, and the point Park makes, I guess, three points. First, it says that whether there's a duty to disclose, and we're talking about statutory salvage, so whether there's a duty to disclose turns on the facts of each case. And as you brought up in my friend's argument, that decision, first of all, all it did was allow the claim to proceed. It's still actually ongoing. There's been no final determination yet. Secondly, it said that due to documents in a claims file, there had to be a trial on that individual case as to whether or not Progressive actually declared the vehicle salvage.  So that would be an individual issue? That's an individual issue. So there's no way to get at that on a class-wide basis? That's exactly right. There's no way to get at that in a class-wide basis. And then the last thing I would say that's also in Park is even beyond that, Your Honor, what Park said is the reason why we have these salvage statutes is to prevent damaged vehicles from getting in the hands of unsuspecting consumers. And the damages theories that the Missouri State Courts recognize are theories for undisclosed damage. And so that's why here it's absolutely critical for them to be able to show that on a class-wide basis, you could show reliance on some representation from the title, because it's not Progressive making the representation after all, right? It's the dealership that makes the representation. How does that factor into this claim? Because Progressive is sort of the start of this process, right? Right. And I'm assuming there's multiple K&Bs out there? Right, exactly. And so all Progressive does, Progressive takes the vehicle and gives it to its vendor, Copark. And when it does so, it gives the vehicle to its vendor, and then it's listed. And the listing discloses the collision and discloses the kind of damage the vehicle obtained and contains a link where you can get an auto check report that would reveal the title history. And so after that, Progressive is out of the picture. And what happens then is someone comes in. It could be a used car dealership, as it was here. It could be somebody who's buying a vehicle for scrap. It could be any one of a number of different kinds of entities. But here, of course, K&B Auto bought the vehicle. And so the claim really relates to the interactions that happened after that vehicle or during the purchase of that vehicle from somebody who was not Progressive. So when Progressive sends it to, is it Copark? Yes. Copark. At what point in this process do you understand their allegation to be that it declares it salvage? Because that seems to be the first part, right? Progressive declares the car salvage but then gets a clean title. Their allegation, as best I can understand it, is because Progressive has internal documents that refer to the term salvage. And we went into this a little bit in our, well, I think that's what they're saying. Our response, as we went into it a little bit in our brief, Your Honor, is, and this is obviously a merits issue, but our response is, one, declare means you have to say something formally. And so what we declare is in the Missouri salvage routing form that's in the record, that's the cover page that we send to Copark. And so there's a place in the bottom right-hand corner where you can circle either clean, junk, or salvage. And so our position is we don't declare something salvage unless we circle salvage on that form. What they're saying is, well, because you have other documents internally that refer to the term salvage, you've declared it salvage. And one thing we need to keep in mind here is Progressive is a nationwide company. It has a legal department that reviews salvage statutes nationwide. And so it has something it calls a national salvage unit to deal with when Progressive needs to obtain salvage titles. And so there's multiple iterations of the use of the term salvage throughout the company. But it's for the purpose of getting this document and getting the car and the payment in the right place in the salvage unit where somebody can make a determination as to whether or not it needs a salvage title. And so our position on the merits is we only declare it needs a salvage title if we circle that particular box on the right form. And so, you know, I guess stepping back, there's no – and this is all dealing with the misrepresentation and we didn't get into the causation piece with the other side. But I would like to just point out that there was no argument on causation made by my friend on the other side below. And so they really don't have, in my view, standing to raise on appeal issues with the causation analysis of the district court's opinion. And I guess circling back to this whole, you know, custom hair designs case, and I agree, Judge Luke, that it's distinguishable. I guess the other thing I would say, and this goes to the other points I've been making about what wasn't presented below, is the only place you'll find custom hair design briefing in the record below is when they cited it for a different point, superiority in their opening brief. If you look at their reply brief in support of class certification, which again is the only time they addressed any of these issues and they addressed reliance on one page, you're not going to see custom hair design cited anywhere. So I don't know how you're supposed to argue that a district court abused its discretion by failing to divine an analogy to a case on a point you never cited based on an argument you never made. If there are any other questions, I'm happy to answer them. Otherwise, I'll cede the balance of my time. It occurs to me that in these cases, as you point out, under one theory, the plaintiffs would have to show reliance on another causation that echoes this theory, essentially the same difficulty that the plaintiffs had, that it's important to realize that the salvage has a value. Correct, Your Honor. And so the circumstances, the reliance element might fall out if there's proof that this person would have bought the car anyway without the representation. So just right there, I mean, it seems to me under both theories, there's a considerable – it seems to me that in many cases, in every case, it would have to be an individualized proof on those issues. And that's why this is not a good class. I completely agree with you, Your Honor. And, you know, we hadn't gotten into the negligence theory much because my friend on the other side hadn't argued it. But as you point out, it does matter whether or not they would purchase the vehicle anyways. And, of course, as the district court cited in its opinion on the causation piece, here there was evidence that the plaintiff did not know what title brands meant and could not recall ever seeing the title before she bought the vehicle. No further questions? Thank you, Your Honor. Thank you. For rebuttal? Thank you, Your Honors, and may it please the Court, I'll try to be brief, just a few quick points in rebuttal. Number one, my friend is wrong that there is no way to determine whether there are particular facts with respect to each class member that would give rise to the same theory of liability that was recognized in Park. You can look at Supplemental Appendix pages 22 and 23. I can't hear you because you're looking down. Sure, I'm trying to speed through this. But if you go to pages 22 and 23 of the Supplemental Appendix, there's an excerpt of the spreadsheet there. And every class vehicle is a vehicle that, as part of that spreadsheet, was progressive retained salvage and total loss and clean title. That's true with respect to every vehicle in the class. And there's a testimony from progressive's own witness admitting that at pages 43 to 49 of the Supplemental Appendix. So those are the three key facts as identified by the Missouri Supreme Court of Appeals in Park. Those are the same three facts that exist with respect to every single member of this class. And number two, my friend just asserted their defense against the claims on the merits. And his defense was that you have to actually circle salvage on this form. There is no indication that they've done that with respect to any class member. It's their own files. They have gone through them. They haven't identified any. And presumably, if they did that, they'd have a salvage title, and then they wouldn't be a class member. And in any event, as the Court recognized in Park, that is a common theory that would be true with respect to every class member. And the common question for the jury would be the veracity of that defense. You're talking awfully fast. You're saying that they've never circled salvage? I didn't – So if you look at – You're too familiar with the case, and you're talking too fast. Yeah, I'm just – Assuming I'm right there, and I'm not. Yeah, I'm just – So what I would do then, I would take a look. The addendum – What was your point? That they – he's wrong to say they've never – Yeah, so I'll try to slow down if you'll maybe permit me to go over it just a tiny bit. Well, you can finish this point, or you can – Okay. Yeah, my point is that – so there's a class definition here, and we know every class vehicle that comes within that definition. And every – there's a spreadsheet that was produced by progressive – who said that if we circle a box, if we declare it salvage, we circle a box. Right, and so – He's saying that's wrong. They don't do it. They've never circled that box. Or maybe I didn't even hear that. So my understanding of what they're talking about is if you look at the claim file, and I think what my friend is referring to is page 20 of the addendum. And if you go to the very bottom corner, then there's a little – a line that's for internal use where you're checking which – my understanding is it's which title you're requesting. And if you're requesting a salvage title, then you'll have a salvage title, and you won't be a class member. And so it's not much of a defense, and to the extent that it's one, it's a common defense. And so I think that's the main point. Waiver – I would just invite the Court to read pages 34 to 35 of the supplemental appendix where the legal argument is made, even if we didn't cite the case. It's not waived. Thank you. Thank you, Counsel. The case has been thoroughly briefed, and we'll take it under advisement.